HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BARBARA LENSCH,<br><br>               Plaintiff,<br><br>    v.<br><br>ARMADA CORPORATION,<br><br>               Defendant. | Case No. 3:10-CV-05167-RBL<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br>[Dkt. #32]. |

## I. INTRODUCTION

THIS MATTER comes before the Court upon Plaintiff Barbara Lensch's Motion for Partial Summary Judgment. [Dkt. #32]. The Court has considered the entirety of the record herein, and for the reasons set forth below, the Court GRANTS the motion.

## II. BACKGROUND

Plaintiff Barbara Lensch brings this action against Defendant Armada Corporation, alleging several violations under the federal Fair Debt Collection Practices Act (FDCPA) and under the Washington Collection Agency Act. She moves for partial summary judgment on three of her eleven claims, each of which alleges that Defendant violated the FDCPA.

On January 6, 2005, Ms. Lensch allegedly bounced a $25.00 check to a nail salon, Nails R Us. [Def.'s Resp., Dkt. #49, at 1]. Three years later, Defendant Armada, a debt collector who purchased the debt from the original creditor, mailed to Ms. Lensch a Notice of Dishonor (NOD), which Ms. Lensch claims she never received. [Pl.'s Motion, Dkt. #32, at 2]. The letter

ORDER - 1

included the following language:

> You are also CAUTIONED that law enforcement agencies may be provided with a copy of this notice of dishonor and the check drawn by you for the possibility of proceeding with criminal charges if you do not pay the amount of this check within thirty-three (33) days after the date this letter is postmarked.

*Id.* at 3. RCW 62A.3-540 explicitly states that collection agencies may use this cautionary language in a NOD. When Ms. Lensch did not respond to the notice, Armada began calling Ms. Lensch at her home and work, leaving voicemail messages, which did not disclose that the messages were from a debt collector. [Def.'s Resp., Dkt. #49, at 3]. Armada had a clear policy that required its collectors to make this disclosure in only their initial communication with a debtor. [Robbins Decl. Ex. B, Dkt. #33-2, at 56–57]. Eventually, Armada filed a summons and complaint in Mason County District Court, attempting to collect on the $25.00 dishonored check, plus interest, fees, and statutory damages. [Def.'s Resp., Dkt. #49, at 2]. Nearly five years after the check had been written, Ms. Lensch was served on December 16, 2009. *Id.*

After receiving the summons and complaint, Ms. Lensch requested validation of the debt, and Armada sent her a copy of the NOD. *Id.* at 3. After exchanging several more emails and phone calls, the parties still could not manage to resolve their dispute over a $25.00 debt. A court date was set, but on April 7, 2010, Armada moved to strike the hearing. [Robbins Decl. Ex. B, Dkt. #33-2, at 111–12]. The record does not indicate whether Ms. Lensch ever paid off the debt.

On March 11, 2010, Plaintiff filed the present action, seeking (1) declaratory judgment that Armada's conduct violated the FDCPA, (2) actual and statutory damages, and (3) costs and reasonable attorney's fees. [Pl.'s Complaint, Dkt. #1]. She moves for partial summary judgment on three claims under section 1692e of the FDCPA, which prohibits debt collectors from using false or misleading representations in connection with collection of a debt.

### III. DISCUSSION

**A. Standard of Review**

Summary judgment is appropriate when the record shows that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *U.S. v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990). When a properly supported motion for summary judgment is made, the burden then shifts, and the opposing party must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. Put another way, summary judgment should be granted when the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. *Id.* at 252. When viewing the evidence at this stage, all justifiable inferences are drawn in favor of the nonmoving party. *Id.* at 255.

### B. The Fair Debt Collection Practices Act (FDCPA) Prohibits False, Deceptive, and Misleading Representations by Debt Collectors and Holds Them Strictly Liable for Any Violations Under the Act.

The purpose of the FDCPA is the elimination of abusive debt collection practices by debt collectors and the promotion of consistent state action to protect consumers against debt collection abuses. 15 U.S.C. § 1692. Accordingly, the statute prohibits debt collectors from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Without limiting the general application of this rule, the statute also enumerates sixteen specific examples of conduct that would be considered use of false or misleading representation and therefore would violate the statute as a matter of law. *Id.*

For instance, the "representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person. . .unless such action is lawful and the debt collector or creditor intends to take such action" violates the FDCPA. 15 U.S.C. § 1692e(4). Additionally, the Act prohibits the "false representation or implication that the consumer committed any crime…in order to disgrace the consumer." 15 U.S.C. § 1692e(7). The Act also requires that the debt collector disclose in its initial communication with the debtor, whether written or oral, that it is attempting to collect a debt and that any information obtained will be used for that purpose. 15 U.S.C. § 1692e(11). And finally, the failure to disclose in all subsequent communications that the communication is from a debt collector violates the FDCPA. *Id.*

The test for determining whether a debt collector violated the FDCPA is objective and does not depend on whether the debt collector intended to deceive or mislead the consumer. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006). Instead, the "least sophisticated" debtor standard applies, and the liability analysis turns on whether a debt collector's communication would mislead an unsophisticated but reasonable consumer. *Id.* Debt collectors are held strictly liable for any violations under the FDCPA. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010).

**C. Plaintiff Seeks Summary Judgment on her Claims Under 15 U.S.C. § 1692e(4), (7), and (11)**

1. Defendant's Notice of Dishonor Violated 15 U.S.C. § 1692e(4) as a Matter of Law

Ms. Lensch contends that Armada violated section 1692e(4) of the FDCPA when it threatened in its NOD to pursue criminal proceedings if the debt was not paid. [Pl.'s Motion, Dkt. #32, at 18]. In response to this claim, Armada attempts to shield itself from liability behind a Washington state statute. [Def.'s Resp., Dkt. #49, at 7].

Section 1692e(4) explicitly states that the "representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person…unless such action is lawful and the debt collector or creditor intends to take such action" violates the FDCPA. The language used in Armada's NOD informs the debtor that if her claim is not paid within thirty-three days, then law enforcement may be provided with a copy of the NOD and dishonored check for the purpose of proceeding with criminal charges. [Robbins Decl. Ex. F, Dkt. #33-6]. This notice is a clear violation of the FDCPA because (1) instituting criminal proceedings would not have been a lawful action as the statute of limitations had already run,[1] and (2) the evidence demonstrates that Armada had no intention of ever turning the check over to law enforcement. [Robbins Decl. Ex. B, Dkt. #33-2, at 79–80].

Additionally, Armada has not presented any evidence in its response that shows it

---

[1] RCW 9A.56.060(5) states that an unlawful issuance of a check in the amount of $750.00 or less is a gross misdemeanor. RCW 9A.04.080(i) states that "no gross misdemeanor may be prosecuted more than two years after its commission." In the present case, Ms. Lensch's check was written on January 6, 2005—more than three years prior to Defendant sending the first NOD in February 2008.

intended to refer the NOD to law enforcement. Instead, it goes to great lengths to distinguish the facts of two cases, one of which was never cited in Plaintiff's motion,[2] and the other was simply used to support the proposition that whether the debt collector intended to institute criminal proceedings was dispositive of the issue.[3] [Pl.'s Reply, Dkt. #51, at 2]. In fact, the evidence provided by the parties on summary judgment shows as a matter of law that Armada has never turned a check over to the police and did not ever intend to do so. [Robbins Decl. Ex. B, Dkt. #33-2, at 79–80]. The FDCPA was enacted, in part, to prevent debt collectors from making empty threats as a way to coerce payment from consumers. Based on these facts, a reasonable jury could not find that Armada did not violate 15 U.S.C. § 1692e(4).

Defendant seeks to avoid this clear result by arguing that Washington state law makes legal what the FDCPA expressly makes illegal. Armada asserts that RCW 62A.3-540 authorizes its use of the cautionary language in the NOD and therefore protects Defendant from any liability under the FDCPA.[4] [Def.'s Resp., Dkt. #49, at 7–8]. This argument fails because the state statute is preempted by the FDCPA.

Under the Supremacy Clause of the U.S. Constitution, state laws that interfere with or contradict federal law are invalid. U.S. CONST. art. VI, cl. 2; *see also U.S. v. Arizona*, 2011 WL 1346945, *2 (9th Cir. 2011) (citing *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000)). Congress is not required to explicitly state that a federal statute preempts state law;

---

[2] *Miller v. Midpoint Resolution Group, LLC*, 608 F. Supp. 2d 389 (W.D. N.Y. 2009) (holding that Defendant violated the FDCPA when it verbally threatened the debtor with criminal prosecution over the phone). In the present case, Armada argues in its response that because there were "no verbal threats or threats of any kind[,]" Plaintiff's motion should be denied. [Def.'s Resp., Dkt. #49, at 14–15].

[3] *Gradisher v. Check Enforcement Unit, Inc.*, 210 F. Supp. 2d 907, 916 (W.D. Mich. 2002) (discussing *Davis v. Commercial Check Control, Inc.*, 1999 WL 89556 (N.D. Ill. Feb. 16, 1999), which held that because Defendant had "no particularized intention to refer individual files for prosecution," threatening to do so violated the FDCPA). The court in *Gradisher* then went on to apply this principle to the facts of its case. *Id.* at 917.

[4] Defendant asserts in its response that both RCW 62A.3-540 and RCW 62A.3-520 authorize the language in the NOD but limits its discussion to the former. The cautionary language in each statute is substantially similar; however, RCW 62A.3-520 provides a fifteen-day window for payment of the debt rather than thirty-three days. Additionally, RCW 62A.3-540 applies only when a check is assigned or written to a collection agency, and the collection agency provides the NOD. But the statute also states that the cautionary language described in RCW 62.A-540(1) may be used as "an alternative to providing a notice in the form described in RCW 62A.3-520." Because the FDCPA regulates only collection agencies' practices, the discussion in this order will be limited to RCW 62A.3-540.

rather, conflict preemption can occur when a state law stands as an obstacle to the fulfillment of the intent and objectives of Congress. *Id.* When enacting the FDCPA, Congress found that existing laws and procedures for redressing injuries caused by abusive debt collection practices were "inadequate to protect consumers." 15 U.S.C. § 1692(b). Thus, Congress intended for the FDCPA to provide greater protection than state law,[5] and the purpose of section 1692 was to eliminate abusive practices and to promote consistent state action.[6] 15 U.S.C. § 1692(e).

In this case, RCW 62A.3-540 interferes with the plain language of 15 U.S.C. § 1692e(4) as well as Congress's express purpose for enacting the FDCPA. Under Washington law, even if the debt collector does not regularly turn over dishonored checks to law enforcement, a debt collector may still caution the debtor about the possibility of criminal proceedings. For example, Washington law provides the following qualification:

> [The cautionary language] shall not be construed as a threat to take any action not intended to be taken; nor shall it be construed to be harassing, oppressive, or abusive; nor shall it be construed to be false, deceptive, or misleading representation; nor shall it be construed to be unfair or unconscionable; nor shall it be construed to violate any law.

RCW 62A.3-540(2). By mirroring the language of the FDCPA,[7] the state statute purports to circumvent the consumer protections provided under federal law. The "representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person…unless such action is lawful and the debt collector or creditor intends to take such

---

[5] If a state statute grants greater protection to a consumer than the FDCPA, then the statute would not be preempted. *See* 15 U.S.C. § 1692n ("For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter."). In the present case, RCW 62A.3-540 provides less protection by allowing debt collectors to threaten action that they neither intend to take nor lawfully may take. Such a threat is one of the violations specifically enumerated by Congress in the FDCPA. 15 U.S.C. § 1692e(4).

[6] For example, in *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 951 (9th Cir. 2011), Defendant asserted that because its requests for admission complied with the applicable state rules, it was not liable under the FDCPA. However, the court rejected this argument, stating "Congress enacted the FDCPA expressly because prior laws for redressing 'abusive, deceptive, and unfair debt collection practices' were 'inadequate to protect consumers.'" *Id.* (quoting 15 U.S.C. § 1692(a), (b)). In order to apply the statute as Congress had written it, the court held that "the statute preempts state laws 'to the extent that those laws are inconsistent with any provision of [the FDCPA].'" *Id.* at 951–52 (quoting 15 U.S.C. § 1692n).

[7] *See, e.g.*, 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.").

action" violates the FDCPA. 15 U.S.C. § 1692e(4). Under RCW 62A.3-540(2), however, even if the debt collector does not regularly intend to take action and even if the debt collector may not lawfully take action against the debtor, threatening to turn a dishonored check over to law enforcement shall not be construed as a false or misleading representation. As a matter of law, this statute wholly contradicts the FDCPA, which states the exact opposite: if a debt collector does not intend to take action or may not take action because it would be unlawful, then it may not threaten a consumer with criminal proceedings. *See* 15 U.S.C. § 1692e(4).

Because RCW 62A.3-540 is inconsistent with provisions of the FDCPA and impedes the fulfillment of congressional intent, it must give way to federal law. RCW 62A.3-540 is preempted and therefore is not a valid affirmative defense to Plaintiff's FDCPA claims.

2.  Defendant's Notice of Dishonor Violated 15 U.S.C. § 1692e(7) as a Matter of Law

Ms. Lensch also argues that Armada violated section 1692e(7) of the FDCPA when it threatened to pursue criminal proceedings in its NOD if the debt was not paid in thirty-three days. [Pl.'s Motion, Dkt. #32, at 18–19]. Section 1692e(7) prohibits the "false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer." Defendant does not adequately respond to this claim but instead argues that RCW 62A.3-540 authorizes the language and protects it from liability under the FDCPA. [Def.'s Resp., Dkt. #49, at 7–8]. Accordingly, Armada does not raise any genuine issues of material fact with respect to this claim that would justify taking it to trial.

By threatening to turn the NOD over to law enforcement, Armada insinuated that Ms. Lensch had committed a crime three years earlier when she bounced the $25.00 check to Nails R Us. While this Court is frustrated that the parties could not manage to resolve this minor dispute without the intervention of the federal courts, the language used in the NOD is a clear violation of the FDCPA because it falsely represented that Ms. Lensch could be prosecuted for her act. In fact, under Washington's bad check law, a person cannot be prosecuted for bouncing a check unless she had the specific intent to defraud the recipient. RCW 9A.56.060. An unsophisticated consumer could not be expected to distinguish a statement by a debt collector that means what it

says—criminal proceedings may be instituted if the debt is not paid—from the specific elements actually necessary for prosecution under state law. The purpose of the FDCPA, in part, is to prevent debt collectors from falsely stating that a consumer committed a crime in order to induce her to pay the debt owed.

Yet, Armada asserts that RCW 62A.3-540 authorizes the cautionary language at issue in the NOD, but as stated in the discussion above, the FDCPA preempts this statute because it lessens consumer protection and obstructs the fulfillment of the FDCPA. Plaintiff has met her burden under this claim, and Defendant has not presented any evidence in its response from which a reasonable jury could conclude that it did not violate 15 U.S.C. § 1692e(7). Because parties are held strictly liable under the FDCPA, Plaintiff's motion on this claim must be granted.

### 3. The Voicemail Messages Left for Plaintiff by Defendant Violated 15 U.S.C. § 1692e(11) as a Matter of Law

Finally, Ms. Lensch contends that Armada violated 15 U.S.C. § 1692e(11), which requires a debt collector to disclose in subsequent communications with the debtor that it is a debt collector and any information received during the communication will be used for that purpose. [Pl.'s Motion, Dkt. #32 at 13]. Armada admits that its policy and procedures require collectors to disclose who they are only in the initial communication. [Robbins Decl. Ex. B, Dkt. # 33-2, at 57–58]. It further admits that the disclosure would never be made during a subsequent communication. *Id.* at 59, 63. In regards to Plaintiff's account, Defendant's representative testified during her deposition that no debt collector at Armada disclosed in its communications with Ms. Lensch that it was a debt collector. *Id.* at 56–57. Because Defendant has failed to present any evidence that would allow a reasonable jury to conclude that it did not violate 15 U.S.C. § 1692e(11), Plaintiff's motion for summary judgment on this claim must be granted.

First, Armada argues that the motion should be denied because Plaintiff failed to allege any facts regarding voicemail messages or phone calls in her first amended complaint. [Def.'s Resp., Dkt. #49, at 15]. Armada, however, had notice of Plaintiff's claim alleging a violation of section 1692e(11). *See id.*; *see also* Pl.'s First Am. Complaint, Dkt. #11, at 13. Furthermore, Plaintiff tailored her discovery requests for the purpose of examining Armada's communications

with Plaintiff, which necessarily includes not only emails and letters sent to the debtor but also phone calls and voicemail messages. [*See* Robbins Decl. Ex. H, Dkt. #33-8 at 4–5]. At no time did Armada object to these requests as beyond the scope of discovery. At no time did it object on the grounds that the requests were not reasonably calculated to produce admissible evidence. And at no time during its representative's deposition did it object to questions about voicemail communications. The key issue under FRCP 8 is whether Armada had fair notice of the section 1692e(11) claim and an opportunity to defend against it. In this case, both of these requirements were met. Accordingly, this claim must turn on its merits rather than a flawed procedural argument.

Next, Armada argues that if a voicemail message contains no information about a debt, then it cannot be considered a "communication" under the FDCPA, and therefore, disclosure that the call is from a debt collector is not required. [*See* Def.'s Resp., Dkt. #49, at 20]. Because Plaintiff failed to provide a recording or transcript of the voicemails, Armada argues that there remains a question of fact for the jury to determine whether the voicemail was a communication.[8] *Id.* at 21–22. In support of its assertion that a communication must contain information regarding a debt in order to trigger the disclosure requirement, Defendant cites two unpublished district court cases, which represent the minority viewpoint on this issue. *Id.* at 20 (citing *Koby v. ARS Nat'l Servs.*, 2010 WL 1438763 (S.D. Cal. 2010); *Biggs v. Credit Collections, Inc.*, 2007 WL 4034997 (W.D. Okla. 2007)).

For example, the Seventh Circuit has plainly rejected the narrow interpretation of a communication in *Koby*, consistently holding that because the presumptive purpose of every phone call from a debt collector to a debtor is an attempt to collect the money owed, any message left constitutes a communication under the FDCPA. *See, e.g.*, *Horkey v. JVDB & Associates, Inc.*, 333 F.3d 769, 774 (7th Cir. 2003). In addition, several cases in our circuit have held that even if the messages do not mention the debt explicitly, section 1692a(2) applies to indirect communications; thus, disclosure that the call is from a debt collector is required whether or not the nature of the call is revealed. *See, e.g.*, *Costa v. Nat'l Action Fin. Servs.*, 634

---

[8] The definition of a communication under the FDCPA is "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

F. Supp. 2d 1069, 1076 (E.D. Cal. 2007); *Hosseinzadeh v. M.R.S. Associates., Inc.*, 387 F. Supp. 2d 1104, 1116 (C.D. Cal. 2005). The weight of authority falls in favor of a broad interpretation, and most courts to decide this issue have held that voicemails are communications that must conform to the disclosure requirements of section 1692e(11).

This broad definition of communication is also consistent with the purpose of the FDCPA, which must be liberally construed in favor of the consumer. Affirming the narrow interpretation advocated by Defendant would provide a loophole for debt collectors and allow them to tailor their voicemail messages in order to circumvent the disclosure requirement under section 1692e(11). *See Ramirez v. Apex Fin. Mgmt., LLC*, 567 F. Supp. 2d 1035, 1041 (N.D. Ill 2008). This Court will not undermine congressional intent in such a way. Armada has admitted that its company policy does not require debt collectors to disclose who they are during subsequent communications with a debtor. Its representative testified that none of the voicemails left for Ms. Lensch would have included this disclosure. Based on this evidence, a transcript or recording of the calls is not necessary to decide the issue. As a matter of law, Defendant violated section 1692e(11) of the FDCPA, and Plaintiff's motion must be granted.

### IV. CONCLUSION

Plaintiff has met her burden, demonstrating that no genuine issue of material facts exist with respect to her claims under sections 1692e(4), 1692e(7), and 1692e(11) of the FDCPA. A reasonable jury could not find that the violations did not occur, and Plaintiff is entitled to judgment as a matter of law. Furthermore, Armada's reliance on a Washington state statute does not excuse violations under federal law. Therefore, Plaintiff Lensch's Motion for Partial Summary Judgment on these three claims is GRANTED, and Defendant's liability on these claims is established. The amount of damages shall be determined at trial.

**IT IS SO ORDERED.**

Dated this 13th day of June, 2011.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE